J-A08005-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EDU, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PATRICIA M. ROTA AND TODAY'S | : | No. 1234 EDA 2017 |
| CHILD LEARNING CENTERS, INC. | : | |

Appeal from the Order Entered March 29, 2017
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2014-19570

BEFORE: PANELLA, J., LAZARUS, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J. **FILED AUGUST 21, 2018**

Appellant, EDU, LLC, appeals from the order granting summary judgment in favor of Appellees, Patricia M. Rota and Today's Child Learning Centers, Inc. ("TCLC") and entering declaratory judgment in favor of Appellees as to Count 1 of Appellees' Counterclaim. The trial court's purpose in issuing the declaratory judgment was to confirm its finding that EDU had failed to exercise the purchase option. We affirm based on the trial court opinion.[1]

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Because we found the contentions of Appellees' Motion to Dismiss, filed on January 8, 2018, to lack merit, we also deny the said Motion. The Motion raised irregularities in Appellant's brief, none of which impeded our ability to review and evaluate this appeal.

The trial court filed a Memorandum and Order that addressed the single issue raised in the Appellant's Brief. *See* Trial Court Memorandum and Order, 3/29/17. *See also* Rule 1925(a) Opinion, 5/5/17. In its memorandum, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them at length here.

For context and the convenience of the reader, we note briefly that the over-arching issue in this case is whether EDU timely and properly exercised a Purchase Option contained in a Memorandum of Understanding ("MOU") executed by the parties. TCLC, which is owned in whole by Rota, operates a number of childcare facilities. In August 2013, the parties entered into a Memorandum of Understanding in which the parties agreed that EDU would be the new manager of TCLC's business. The MOU contained a termination provision, and in the event of termination, the MOU specified that EDU had an option to purchase the stock of TCLC at terms specified therein:

> (E)ither Company [TCLC] or EDU may terminate this agreement upon thirty (30) days (10 days during the transition phase) advance written notice, with the understanding that if EDU is terminated during the vested phase, EDU shall have the option to purchase the stock of Owner [Rota] at a price not less than Base Value, and not more than six (6) times (i) the EDIDTA at that time, plus (ii) Owner's annual salary package at that time, if any, plus (iii) Ray Townsend's annual salary package at that time, if any (Collectively, "Enterprise Value").

An Addendum to the MOU was eventually reached by the parties on December 4, 2013, which defined Base Value to be $4,000,000.

- 2 -

The parties separated their contractual relationship in May 2014, and then exchanged in a number of correspondences regarding the purchase option. Unfortunately, their relationship soured, with Rota discontinuing all ties with EDU. The communications ended with EDU taking the position that it properly and timely exercised its purchase rights under the previously mentioned option terms of the MOU, and Appellees rejecting those attempts as not conforming to the MOU.

EDU initiated this lawsuit on July 3, 2014, and in its Fourth Amended Complaint filed on November 17, 2014, asserted six counts: (1) Breach of Contract; (2) Appointment of a Custodian; (3) Accounting; (4) Specific Performance; (5) Unjust Enrichment; and (6) Equitable Lien/Constructive Trust. In the Answer to the Fourth Amended Complaint, specifically Paragraph 31, the Appellees denied that EDU had exercised the Purchase Option and specifically alleged that EDU never communicated an offer with the terms identified in the Purchase Option ("EDU has never exercised the option limited to such terms . . . .").

Eventually, the parties cross-filed motions for summary judgment. The trial court granted summary judgment and declaratory relief in favor of Appellees. This appeal followed.

The overlapping question raised in this case is whether EDU properly exercised its rights under the Purchase Option. **See** Appellants' Brief, at 9.

Initially, we note our standard of review of a trial court's decision in a declaratory judgment action is narrow. Because declaratory judgment actions arise in equity, we will set aside the judgment of the trial court only where it is not supported by adequate evidence. The test is not whether we would have reached the same result on the evidence presented, but whether the trial court's conclusion can reasonably be drawn from the evidence. **See** **Nationwide Mut. Ins. Co. v. Cummings**, 652 A.2d 1338, 1340–1341 (Pa. Super. 1994).

Our standard of review of a challenge to an order granting summary judgment is as follows:

> We may reverse if there has been an error of law or an abuse of discretion. Our standard of review is de novo, and our scope plenary. We must view the record in the light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

> Furthermore,

> [in] evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

**Gubbiotti v. Santey**, 52 A.3d 272, 273 (Pa. Super. 2012) (citations omitted).

After a comprehensive review of the record, the briefs of the parties, the applicable law, and the well-reasoned memorandum of the trial court, we conclude that there is no merit to the issue Appellant has raised on appeal. The trial court properly disposed of the question presented herein.

As noted by the trial court, all of the relief requested in the Appellant's six count Amended Complaint is conditioned upon proof that EDU properly exercised the Purchase Option contained in the MOU. After a thorough review of depositions and exhibits, the trial court aptly concluded that EDU did not submit an acceptance of the minimum amount of terms specified in the MOU, but instead made a counter-offer, or reply, to Appellees. This response, which added qualifications and conditions to the purchase option terms, could not be considered an acceptance of the Purchase Option, and therefore the Appellant has no basis for its action against Appellees.

Accordingly, we affirm on the basis of the well-reasoned memorandum by the Honorable Steven C. Tolliver, Sr., dated March 29, 2017, in Civil Division No. 2014-19570, Court of Common Pleas of Montgomery County, PA.

Order affirmed. Motion denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/18

IN THE COURT OF COMMON PLEAS OF
MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| EDU, LLC | : | NO. 2014-19570 |
| **Plaintiff/Appellant** | : | |
| v. | : | **1234 EDA 2017** |
| | : | |
| PATRICIA M. ROTA and | : | |
| TODAY'S CHILD LEARNING CENTERS, INC. | : | |
| **Defendants/Appellees** | : | |

Tolliver, J.                                                                                    May $5$ , 2017

## OPINION

Appellant EDU, LLC appeals from this Court's March 29th, 2017 Order granting

summary judgment in favor of Appellees Patricia M. Rota and Today's Child Learning Centers,

Inc.

On July 3, 2014 Appellant commenced this action by the filing of a Complaint. On

November 17, 2014 Appellant filed its Fourth Amended Complaint ("Amended Complaint"). On

December 30, 2016 Appellees filed a Motion for Summary Judgment against Appellant as to all

counts of its Amended Complaint and in favor of Appellees' Counterclaim for Declaratory

Judgment. On February 28, 2017, Appellant filed a Cross-Motion for Summary Judgment. On

March 23, 2017, this Court heard Oral Argument on these Motions. On March 29, 2017 this

Court denied Appellant's Motion for Summary Judgment and granted Appellee's Motion for

Summary Judgment.

In its Concise Statement of Matters Complained of on Appeal, Appellant claims that the

trial court erred in: entering summary judgment in favor of Appellees, denying summary

judgment in favor of Appellant, and entering a declaratory judgment in favor of Appellees. This

1

Court respectfully directs the Superior Court to the Memorandum attached to the March 29, 2017

Order, a copy of which is attached hereto, for this Court's rationale.

This Court's March 29, 2017 Order granting summary judgment in favor of Appellees

was proper and, accordingly, should be **AFFIRMED**.

RESPECTFULLY SUBMITTED,

STEVEN C. TOLLIVER, SR.,     J.

**This Opinion has been E-Filed on 5/⟨⟩ /17**

Copy sent by **Interoffice Mail** on 5/⟨⟩ /17 to:
Court Administration – Civil Division

Judicial Secretary

2

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL DIVISION

EDU, LLC  :     NO. 2014-19570
       Plaintiff  :
       v.  :
       :
PATRICIA M. ROTA and  :
TODAY'S CHILD LEARNING CENTERS, INC.  :
       Defendants  :

## MEMORANDUM AND ORDER

Presently before the Court is Defendants Patricia M. Rota and Today's Child Learning Centers, Inc.'s ("Defendants") Motion for Summary Judgment against Plaintiff EDU, LLC ("Plaintiff" or "EDU").

### I. UNDISPUTED FACTS AND PROCEDURAL HISTORY

Plaintiff initiated this action by complaint on July 3, 2014. On November 17, 2014 Plaintiff filed its Fourth Amended Complaint (the "Complaint") with causes of action for Breach of Contract, Appointment of a Custodian, Accounting, Specific Performance, Unjust Enrichment and Equitable Lien/Constructive Trust. The members of Plaintiff EDU are Joseph W. Hopkins ("Joseph Hopkins"), Justin J. Hopkins ("Justin Hopkins"), Eric A. Hopkins ("Eric Hopkins") and Christopher J. Phifer ("Chris Phifer"). Defendant Today's Child Learning Centers, Inc. ("TCLC") operates a number of child care facilities. Defendant Patricia M. Rota ("Rota") is the sole shareholder of TCLC.

On or about August 30, 2013, Plaintiff EDU and Defendants TCLC and Rota executed a Memorandum of Understanding ("MOU"). The MOU was an agreement between EDU, TCLC (as Company), and Rota (as Owner), for EDU to be the manager of TCLC effective September 1, 2013. Joseph Hopkins, Justin Hopkins and Chris Phifer were the members of EDU that were to be involved in the management of TCLC.

1

Exhibit "A"

The last paragraph of the MOU contains termination and option language ("Purchase Option") which states the following:

> Notwithstanding the above, either Company or EDU may terminate this agreement upon thirty (30) days…advance written notice, with the understanding that if EDU is terminated…EDU shall have the option to purchase the stock of Owner at a price not less than Base Value, and not more than six (6) times (i) EBIDTA at that time, plus (ii) Owner's annual salary package at that time, if any, plus (iii) Ray Townsend's annual salary package at that time, if any (Collectively, "Enterprise Value").

Plaintiff's six-count Complaint and Defendants' Counterclaim for declaratory judgment primarily arise from the termination and option language in the MOU.

On December 4, 2013, Joseph Hopkins sent Rota an email that was subsequently signed by Rota, Joseph Hopkins, Justin Hopkins and Chris Phifer. Plaintiff identified this email as an addendum to the MOU ("Addendum"). The Addendum defined Base Value to be $4,000,000.

The relationship between the parties became strained in late 2013 and early 2014. Attached to an email dated May 14, 2014 was a document entitled "Terms of Purchase Today's Child Learning Centers, Inc. Stock Transfer" that contained an offer from Joseph Hopkins, Justin Hopkins, Eric Hopkins and Chris Phifer to purchase all of the outstanding shares of Rota's stock in TCLC for $4,000,000, payable in installments and with various other terms and restrictions ("Purchase Offer").

Rota declined the Purchase Offer in an email of May 20, 2013 to Joseph Hopkins, Justin Hopkins and Chris Phifer. Although there is a dispute of fact as to which side terminated the agreement, all parties agree that the MOU was terminated soon after the Purchase Offer was rejected.

Joseph Hopkins acknowledged in his deposition that the Purchase Option in the MOU did not make any reference to installment payments, and did not give EDU the right to pay the purchase price in installments. Joseph Hopkins deposition N.T. p. 82 L4-18. He acknowledged that the Purchase Option in the MOU was a "cash deal". Joseph Hopkins deposition N.T. p. 77 L17-20. He further

2

acknowledged that EDU had not made a cash offer in an attempt to exercise the Purchase Option. Joseph Hopkins deposition N.T. p. 77 L21 – p. 78 L4.

Joseph Hopkins testified that he needs to perform an analysis of TCLC's financials to "come up with a number" in order to exercise the Purchase Option. Joseph Hopkins deposition N.T. p. 77 L21 – p. 78 L8. He testified that EDU has exercised the Purchase Option, even without giving a dollar amount, if not by the Purchase Offer, then by asking for Specific Performance in the Complaint. Joseph Hopkins deposition N.T. pp. 76-79.

There is no evidence from EDU, if they were to exercise the Purchase Option, what specific dollar amount, if any, EDU would pay. When given a hypothetical at his deposition, Joseph Hopkins testified to the following:

> Q. Okay. I'm going to ask you a hypothetical question. If you had certain financials from TCLC, and those financials led you to a calculation under the memorandum of understanding... that the valuation would be computed as $10 million, would you buy that company?
>
> A. I don't know the answer to that. It – it – it sounds – if that – if I – if you could show me that I had a legitimate EBITDA analyzed by my accountants to show a – a six cap and the ability to get to $10 million, would I buy it? **I might, yeah.**
> Q. Okay. But based upon what the financials say, you can't say, sitting here today, in your own opinion, you can't say whether you would exercise the option or not?
>
> A. I would – I would not be able to say I wouldn't.
>
> Q. But you can't say that you would exercise the option, either.
>
> A. No. **This is not an unconditional purchase.** The purchase is defined by what EBITDA shows and what the business shows **if I want to exercise that option.**

Joseph Hopkins deposition N.T. p. 82 L23 – p. 83 L23 (emphasis added).

On December 30, 2016 Defendants filed a Motion for Summary Judgment against Plaintiff as to all counts of its Complaint and in favor of Defendants' Counterclaim for Declaratory Judgment. On February 28, 2017, Plaintiff filed a Cross-Motion for Partial Summary Judgment. On March 23, 2017,

3

this Court heard Oral Argument on these Motions. The Cross-Motions for Summary Judgment are the subject of this Order and Memorandum.

## II.    DISCUSSION

With minor exception, the entirety of Plaintiff's six-count Complaint is prefaced upon an assertion that it properly exercised the Purchase Option contained in the MOU. Defendants' Counterclaim for declaratory judgment seeks a declaration that the Purchase Option was not properly exercised and has expired and that Defendants be relieved from any further performance under the MOU.

This court will address the Purchase Option first as it impacts upon each count of the Complaint and Defendants' Counterclaim for declaratory judgment.

### A.    Plaintiff EDU never exercised the Purchase Option.

An option has been defined as "an unaccepted offer to sell," *Barnes v. Rea*, 219 Pa. 279, 284 (1908), or "a contract to keep an offer open." *Warner Bros. Theatres, Inc. v. Proffitt*, 329 Pa. 316, 319 (1938). Accord Restatement of Contracts, §§ 24, 46. The offeror is only bound when the offer is accepted. *Chanoff v. Fiala*, 440 Pa. 424 (1970). To constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer. *Cohn v. Penn Beverage Co. et al.*, 313 Pa. 349, 352 (1934). "An option contract is a contract to keep an offer open. However, the option arises and exists only if and unless the optionee elects to exercise the option by unequivocally accepting the offer." *Schecter v. Watkins*, 577 A.2d 585, 593 (Pa. Super 1990).

This court has long adhered to the position of Restatement, Contracts, § 60 (1932), that "a reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer." *Hedden v. Lupinsky*, 176 A.2d 406, 408 (Pa. 1962).

4

Plaintiff has not exercised the Purchase Option according to its terms. Stated another way, after the termination of the MOU, Plaintiff never unequivocally accepted the offer contained in the Purchase Option in accordance with its terms.

Plaintiff takes the position that the prayer for Specific Performance found in the Complaint was an exercise of the Purchase Option.[1] However, a close reading of the Complaint shows nothing of the sort, and in fact, reveals Plaintiff's misunderstanding of what an option contract is and how to effectuate acceptance of the offer contained within an option contract.

The Complaint reads in relevant part:

45. Plaintiff sought to benefit either through increased net income shared equally between EDU and Rota, or the Purchase Option.

46. Rota, in violation of the MOU and Addendum, following EDU's termination has failed to tender an offer to sell her ownership interest in TCLC to EDU upon EDU's numerous attempts to exercise the Purchase Option.

47. Due to the unique nature of Plaintiff's services and damages suffered as a result of Rota's conduct, there is no adequate remedy at law and Plaintiff demands specific performance under the MOU and Addendum.

In Plaintiff's Complaint, Plaintiff asserts that Rota violated the terms of the MOU and Addendum by failing to "tender an offer to sell her ownership interest in TCLC." However, as explained above, the option language in the MOU is, in fact, the offer, and to exercise the Purchase Option, it is incumbent upon Plaintiff to unequivocally and without qualifications accept the offer contained therein. *See, Schecter v. Watkins*, 577 A.2d 585, 593 (Pa. Super 1990). Therefore, it is this

---

[1] At various points, Plaintiff has seemed to take the position that the Purchase Offer was also an exercise of the Purchase Option. However, this cannot be the case because: (1) the Purchase Offer was made prior to the termination of the MOU, and therefore was not within the time in which Plaintiff had the right to exercise the Purchase Option, and (2) the Purchase Offer was for $4,000,000 paid in installments and with other terms and conditions that were not present in the Purchase Option. Therefore, it is not possible that the Purchase Offer could have the legal effect of acceptance of the Purchase Option contract.

5

Court's job to determine if Plaintiff has done just that. Based upon testimony of Joseph Hopkins and, indeed, the arguments made by Plaintiff's own counsel during oral argument, it clearly has not.

EDU's position on the purchase price contained in the Purchase Option, and indeed whether it is willing to pay any amount, is equivocal and undetermined. First it must be noted that the Purchase Option language allows Plaintiff to elect to buy TCLC at a price "not less than Base Value," set by the parties at $4,000,000, and no more than Enterprise Value, an amount based on six times EBIDTA.[2] Plaintiff admits that the Base Value of $4,000,000 sets the "minimum value" at which Plaintiff could exercise the Purchase Option. Transcript of Oral Argument March 23, 2017 at 36. In other words, the Purchase Option would not allow for a sales price of less than $4,000,000. There has never been an explanation of why Plaintiff would not accept the offer contained in the Purchase Option at the minimum amount of $4,000,000. Indeed, it would be irrational for Plaintiff to elect to pay more than the minimum required under the MOU. Therefore, the argument that Plaintiff requires any sort of accounting before it can accept the offer contained in the Purchase Option is a red herring.

Moreover, although Plaintiff has clearly expressed an interest in potentially exercising the Purchase Option at some point in the future, it has at no point expressed that it is ready, willing and able to pay the admitted Base Value of $4,000,000 set forth in the Purchase Option, and therefore it has not properly exercised the option. It cannot take the position that it exercised the Purchase Option on the one hand, yet also take the position that it may or may not go through with the purchase of the shares depending upon the outcome of its analysis of TCLC's financials.[3] Indeed, Counsel for

---

[2] Arguably the sales price range is not reasonably definite and certain to constitute a valid offer that would allow for mutual assent, but regardless of this point, EDU has never accepted the offer at any dollar amount, and therefore this issue is moot.

[3] It must be noted that at no time during this litigation, or even beforehand, has Plaintiff made a specific request for TCLC financials to perform the analysis alleged necessary to come up with a dollar amount. In none of the emails attached to Plaintiff's Complaint, or in any other emails that Plaintiff produced in discovery, is there a request for TCLC's financials. Moreover, there is nothing in the Purchase Option that suggests Plaintiff is entitled to such financial documents before exercise of its Purchase Option. As noted above, however, any such assertion that financials are necessary to accept the offer found in the Purchase Option is a red herring as Plaintiff was always able to accept the offer at the minimum Base Value of $4,000,000.

6

Plaintiff continued to make equivocal statements regarding whether Plaintiff would go through with the purchase even at the Oral Argument for this motion.[4]

Based upon the foregoing, there is no genuine issue of material fact as to whether Plaintiff exercised the Purchase Option to purchase Defendant Rota's shares of TCLC. Plaintiff has not exercised the Purchase Option as it has not unequivocally accepted the offer contained therein by committing to being ready, willing and able to pay the minimum $4,000,000 Base Value or any other amount.

## B. The option to purchase has expired.

An option expires unless it is exercised in a timely manner. *In re Intermet Realty Partnership*, 26 B.R. 383, 388 (Bankr.E.D.Pa. 1983); *Warner v. Bedell Co. of Pittsburgh*, 278 Pa. 576 (1924). Where the time for doing something under a contract is not determined by it, the law declares that it is to be done in a reasonable time. *Markley v. Godfrey*, 254 Pa. 99 (1916).

The MOU has been terminated since May 2014, more than two and a half years ago. The relationship between EDU on the one part, and TCLC and Rota on the other lasted less than nine months. Under the circumstances, EDU having yet to exercise the Purchase Option or otherwise take steps to determine whether it would exercise the Purchase Option, the Purchase Option has expired.

## C. Counts One through Six each lack one or more necessary elements of the cause of action or claim for relief.

### 1. Count One—Breach of Contract

Plaintiff alleges three breaches by Rota and TCLC: First, it alleges that Rota used TCLC funds to pay her personal real estate taxes and began making company decisions without consulting Plaintiff;

---

[4] When describing why Plaintiff requested a receiver to be appointed in this case, Plaintiff's counsel stated: "[A valuation expert appointed by the receiver will] come up with a number. That is submitted and then the receiver will come back and report to the court or to the parties and they either say, hey, **we'll purchase it at this price or we won't**." Transcript of Oral Argument March 23, 2017 at 25 (emphasis added). Counsel later remarked during his argument that, "When we talk about specific performance, that is what we are looking for. We're looking for help from the court, get the number and **then my client will make a decision** [whether to exercise the option or not] based upon whatever the court decides that number should be." Transcript of Oral Argument March 23, 2017 at 29 (emphasis added).

7

Second, that Rota terminated "EDU's consultancy"; Third, that following termination, Rota failed to tender an offer to sell her ownership interest in TCLC to EDU upon EDU's "numerous attempts" to exercise the Purchase Option.

To establish a cause of action for breach of contract, the Plaintiff must prove: (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages. *Core States Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999).

As to the first alleged breach, there is no evidence that Plaintiff has sustained damages as a result of Rota not consulting with EDU prior to paying personal real estate taxes or as a result of Rota making any company decisions without consulting EDU.[5] There is also no evidence that either is a breach of a duty imposed by the MOU or Addendum.

As to the second alleged breach, there is no evidence that TCLC breached the MOU by terminating "EDU's consultancy." The MOU was terminable at will; therefore there is no breach of a duty. Plaintiff, in fact, pled that the MOU was terminable at will. In addition, there is no evidence in the record that Plaintiff sustained damages as a result of any such termination.

As to the third alleged breach, there is no evidence in the record supporting the allegation of breach of contract by Rota failing to tender an offer to sell her ownership interest in TCLC to EDU upon EDU's alleged exercise of the Purchase Option. Plaintiff never exercised the Purchase Option for the reasons set forth above in Discussion Section A.

The missing facts laid out above are essential to a cause of action for breach of contract, and without which, Plaintiff's Breach of Contract claim must fail.

### 2. Count Two—Appointment of Custodian

Plaintiff is seeking the appointment of a custodian in Count Two of the Complaint. Since Plaintiff did not exercise its Purchase Option, this is unnecessary. Moreover, Plaintiff is not entitled to

---

[5] The non-moving adverse party may not rest upon mere allegations or denials of his pleading. Pa.R.C.P. 1035.3(a).

8

the appointment of a custodian under Business Corporation Law at 15 Pa.C.S.A. § 1767 as it is not a shareholder of TCLC.

Therefore, Plaintiff's request for Appointment of a Custodian must fail.

### 3. Count Three—Accounting

Plaintiff seeks an accounting of TCLC operations. This is based upon the assumption that either (1) the MOU is still in effect or (2) that Plaintiff is owed this based upon its desire to exercise the Purchase Option. However, as described above, the MOU is terminable at will, Plaintiff never exercised its Purchase Option and it has since expired.

Moreover, an equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law. *Buczek v. First Nat'l Bank of Mifflintown*, 531 As.2d 1122, 1124 (Pa. Super. 1987).

Therefore, Plaintiff's request for an Accounting must fail.

### 4. Count Four—Specific Performance

The only potential basis for specific performance would be if the Purchase Option was properly exercised by Plaintiff. As previously discussed, Plaintiff has not exercised the Purchase Option.

Therefore, Plaintiff's request for Specific Performance must fail.

### 5. Count Five—Unjust Enrichment

Plaintiff alleges that Rota "is being unjustly enriched to the detriment of the plaintiff by refusing to sell TCLC to plaintiff or otherwise confer the value of its bargain." This is based upon the assumption that either (1) the MOU is still in effect or (2) that Plaintiff has properly exercised its Purchase Option. However, as described above, the MOU is terminable at will, Plaintiff never exercised its Purchase Option and it has since expired.

9

Moreover, "Where an expressed contract already exists to define the parameters of the parties' respective duties, the parties may avail themselves of contract remedies and an equitable remedy for unjust enrichment cannot be deemed to exist." *Villoresi v. Femminella,* 856 A.2d 78 (Pa. Super. 2004).

Therefore, Plaintiff's request for damages related to Unjust Enrichment must fail.

### 6. Count Six—Equitable Lien/Constructive Trust

Plaintiff's request for an Equitable Lien or Constructive Trust is based upon the assumption that either (1) the MOU is still in effect or (2) that Plaintiff has properly exercised its Purchase Option. However, as described above, the MOU is terminable at will, Plaintiff never exercised its Purchase Option and it has since expired.

Therefore, Plaintiff's request for Equitable Lien/Constructive Trust must fail.

### D. Where no genuine issues of material fact exist and Plaintiff is entitled to judgment as a matter of law, Summary Judgment should be granted.

The purpose of the summary judgment procedure is to prevent vexation and delay, improve the machinery of justice, promote the expeditious disposition of cases and avoid unnecessary trials where no genuine issue of material fact is raised. *See* Pa.R.C.P. 2035.2. The burden of demonstrating there is no genuine issue of material fact rests on the moving party. *Ducko v. Chrysler Motors Corp., et al.,* 433 Pa. Super. 47 (1994). In considering a motion for summary judgment, the Court "must view the record in favor of the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-movant." *Cunningham v. McWilliams,* 714 A.2d 1054, 1056 (Pa. Super. 1998). Summary judgment is especially appropriate with respect to claims regarding the application of unambiguous contract terms as such matters do not require factual findings. *See, e.g., Denlinger, Inc. v. Dendler,* 415 Pa. Super. 164, 169 (1992).

Here, there are no genuine issues as to any material fact to be determined at trial and therefore, Defendants are entitled to Summary Judgment as to all counts as a matter of law.

10

**E. A Resolution of the Foregoing in Favor of Defendants Supports Summary Judgment in Favor of Defendants on Their Counterclaim for Declaratory Judgment**

Defendants have asked for Declaratory Judgment that: (1) the Purchase Option has expired and (2) Plaintiff has not exercised the Purchase Option pursuant to the terms set forth in the MOU and what Plaintiff characterizes as an Addendum.

For the reasons set forth in the rest of the Memorandum, this request should be Granted.

11



## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
### CIVIL DIVISION

EDU, LLC                                          :          NO. 2014-19570
             **Plaintiff**                        :

       v.                                       :

                                       :

PATRICIA M. ROTA and                             :
TODAY'S CHILD LEARNING CENTERS, INC.             :
             **Defendants**                     :

### ORDER

AND NOW, this _29th_ day of March, 2017, upon consideration of Plaintiff's Motion for Partial Summary Judgment, Defendants' Response in Opposition thereto, and Oral Argument held on March 23, 2017, it is hereby **ORDERED** and **DECREED** that Plaintiff's Motion for Summary Judgment is **DENIED**.

Further, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's Response in Opposition thereto, and Oral Argument held on March 23, 2017, it is hereby **ORDERED** and **DECREED** that Defendants' Motion for Summary Judgment is **GRANTED**.

It is further **ORDERED** that judgment is entered in favor of Defendants and against Plaintiff as to Count I of Defendants' Counterclaim for Declaratory Judgment wherein this Court hereby declares that Plaintiff failed to exercise the Purchase Option contained in the Memorandum of Understanding between the parties and that the Purchase Option has expired.

BY THE COURT:

STEVEN C. TOLLIVER, SR.,    J.

This Order was e-filed on 3/29/17

Copy sent 3/29/17 by **Interoffice Mail** to:
Court Administration – Civil Division

Judicial Secretary

12