Harold B. TROWBRIDGE, Appellant

v.

**Richard and Mary McCAIGUE**

v.

**Sylvan Glen, Inc.**

Superior Court of Pennsylvania.

Argued Oct. 20, 2009.

Filed March 26, 2010.

Rehearing Denied May 20, 2010.

---

Jarett R. Smith, Coudersport, for appellant.

Bruce D. Cahilly, Coudersport, for appellees.

BEFORE: BENDER, SHOGAN and FITZGERALD *, JJ.

## OPINION BY BENDER, J.:

¶ 1 Harold Trowbridge (Appellant) appeals from the order granting Richard and Mary McCaigue's (Appellees) motion for judgment on the pleadings. Appellant claims that the trial court erred in granting the motion because the parties had entered into a contract for the sale of real estate, which Appellees breached, thereby entitling Appellant to specific performance. For the following reasons, we reverse.

¶ 2 The trial court summarized the facts of this case as follows:

Harold Trowbridge (Plaintiff) initiated the present suit on April 16, 2008 against Richard and Mary McCaigue (Defendants). The Plaintiff contends that he had agreed to purchase land owned by the Defendant, approximately 232 acres of land located in Eulalia Township, Potter County, Pennsylvania. The Plaintiff claims that an enforceable contract arose when both Plaintiff and Defendants signed a document on March 29, 2008 the Plaintiff now purports to be a contract. This document, which is titled "Purchase Offer" in large, bold, underlined type, gives a brief description of land and location as well as purchase price. However, the document goes on to outline the following terms:

(1) Buyer to pay all sellers closing costs including the commission to God's Country Real Estate Inc.

(2) Buyer is buying the property in as is condition.

(3) Buyer accepts the property in clean and green tax basis[.]

(4) Buyer accepts certain areas of crep. Program.

* Former Justice specially assigned to the Superior Court.

(5) If Sellers Richard & Mary accept this offer, than [sic] both buyer & sellers will enter into a sales agreement. This is to be made out by God's Country Real Estate Inc.

The Plaintiff and Defendants signed and dated this document on March 29, 2008.

On April 4, 2008 the Plaintiff delivered to William Garman, Jr., the real estate agent who drafted the "Purchase Offer" document, the sum of $1,000 purportedly as consideration and down payment for 232 acres of land.

On April 11, 2008 the Defendants entered into a land sale contract with Sylvan Glen, Inc. that involved the original tract of land plus an additional 84.3 acres for a total price of $450,000.

The Plaintiff[ ] brought this present suit on April 16, 2008. On May 29 Sylvan Glen, Inc. filed a petition to intervene in this suit and that petition was granted on July 31, 2008. On August 8, 2008 the Intervenor motioned this Court, in which Defendants joined, to enter a judgment on the pleadings and dismiss the Plaintiff's complaint with prejudice.

Trial Court Opinion (T.C.O.), 10/21/08, at 1–2. The trial court granted the motion for judgment on the pleadings and Appellant then filed this appeal presenting the following questions for our review:

¶ 3 Did the trial court err as a matter of law when it granted the Intervenor's motion for judgment on the pleadings where:

a. There were obvious material issues of fact at variance between all [the] parties['] pleadings as to support a verdict of judgment on the pleadings?

b. Were sufficient indicia and elements of a writing [ ] present as to form a contract for the purchase of real property including a price, a definite amount of acreage, signature of the party to be charged, a clear and definite closing date, and contemporaneous consideration as to satisfy the statute of frauds that all real property purchase contracts must be in writing with clear and unequivocal terms?

Brief for Appellant at 12.

¶ 4 "Our standard of review of the grant of a motion for judgment on the pleadings is limited." *Metcalf v. Pesock*, 885 A.2d 539, 540 (Pa.Super.2005). "A motion for judgment on the pleadings will be granted where, on the facts averred, the law says with certainty that no recovery is possible. As this appeal presents an issue of law, our review is plenary." *American Appliance v. E.W. Real Estate Management, Inc.*, 564 Pa. 473, 769 A.2d 444, 446 (2001) (citation omitted).

¶ 5 In the instant case, the trial court found that the signed Purchase Offer (hereinafter "Agreement"), was an "agreement to agree" and that "no express contract ever existed between" Appellant and Appellees. T.C.O., 10/22/08, at 4, 5. The court's decision was based on that part of the Agreement that states that if the Appellees accept this offer, then the parties would "enter into a sales agreement." *Id.* at 2.

¶ 6 "The Statute of Frauds instructs that a purported transfer of an ownership interest in real property is not enforceable unless evidenced in writing and signed by the party(ies) granting the interest." *Long v. Brown*, 399 Pa.Super. 312, 582 A.2d 359, 361 (1990) (citing 33 P.S. § 1). "A writing required by the Statute of Frauds need only include an adequate description of the property, a recital of the consideration and the signature of the party to be charged." *Hessenthaler v. Far-*

*zin,* 388 Pa.Super. 37, 564 A.2d 990, 994 (1989).

¶ 7 The essential terms required to satisfy the Statute of Frauds are present in the Agreement signed by Appellant and Appellees. While the trial court acknowledges this, it concluded that the Agreement was nonetheless not a contract because it indicated "an intention of the parties to come to an agreement at a later time." T.C.O., 10/21/08, at 4. In so holding the court relied on *Highland Sewer and Water Authority v. Forest Hills Mun. Authority,* 797 A.2d 385 (Pa. Cmwlth.2002), wherein the court stated, "An agreement to agree is incapable of enforcement, especially when it is stipulated that the proposed compact shall be mutually agreeable." *Id.* at 390 (quotation marks omitted). However, in *Highland,* the court specifically held that the trial court did not err in concluding that no express contract arose from the parties' conduct because they had "indicated an intention to agree upon *essential terms* in the future." *Id.* (emphasis added).

¶ 8 In contrast, the Agreement here does not indicate an intention to agree upon any essential terms in the future. In fact, contrary to the trial court's assertion, the Agreement does not imply that there was anything left to agree upon in the future. Rather, the only future occurrence contemplated by the Agreement is the execution of a sales agreement.

¶ 9 "An agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed." *Mastroni–Mucker v. Allstate Ins. Co.,* 976 A.2d 510, 523 (Pa.Super.2009) (quotation marks omitted).

[I]t is well-settled in Pennsylvania that where the parties have settled upon the essential terms and the only remaining act to be done is the formalization of the agreement, the latter is not inconsistent with the present contract.

. . .

Section 26 of the Restatement of Contracts specifically recognizes that parties may bind themselves contractually although they intend, at some later date, to draft a more formal document: Mutual manifestations of assent that are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof.

*Field v. Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 305 A.2d 689, 693 (1973) (citations and quotation marks omitted).

¶ 10 In *GMH Associates v. Prudential Realty Group,* 752 A.2d 889 (Pa.Super.2000), this Court applied these principles in a dispute over an alleged real estate contract. *GMH* is similar to the case before us in that GMH was a prospective buyer of real estate that Prudential sold to a third party. GMH sued Prudential for damages, alleging that the parties had entered into a contract for the sale of the subject property prior to Prudential's selling of the property to a third party. The matter proceeded to a non-jury trial, which resulted in a verdict in favor of GMH. Prudential appealed, claiming that the trial court had erred in finding that the parties had entered into a contract. On appeal, we reversed.

¶ 11 The property at issue in *GMH* was a parcel of commercial real estate valued at approximately $100 million. Consequently, the negotiations occurred over several months and were complex in nature. Before analyzing whether the par-

ties had agreed to the essential terms for the sale of the property, we stated, "[w]here the parties have agreed on the essential terms of a contract, the fact that they intend to formalize their agreement in writing but have not yet done so does not prevent enforcement of such an agreement." *Id.* at 900. (citation omitted). We identified the essential terms of a contract for the sale of real estate as "the naming of the specific parties, property and consideration or purchase price." *Id.* We then proceeded to discuss why the essential terms had not been agreed upon.

¶ 12 Specifically, we first concluded that the parties had failed to agree upon a purchase price. Second, because the purported acceptance letter incorporated by reference the original letter of intent that stated that the "essential terms shall be the subject of further negotiations," we concluded that there was a lack of mutual assent between the parties. *Id.* at 901. Finally, we concluded that because the letter of intent stated that any written contract the parties might negotiate was conditioned on the approval of Prudential's senior management, and such approval was lacking, a condition precedent had not been met. *See id.*

¶ 13 None of these circumstances are present in the case before us. Accepting as true Appellant's well-pled facts and the adverse facts admitted by Appellant, Appellant has alleged the essential terms of a contract for the sale of real estate. *Wang v. Whitetail Mountain Resort*, 933 A.2d 110, 112–13 (Pa.Super.2007). Consequently, we conclude that the trial court erred in granting the motion for judgment on the pleadings. In sum, given the preliminary state of the record, we cannot state that the law bars recovery absolutely, or that the case is so "free and clear from doubt ... that a trial would prove fruitless." *See id.*

¶ 14 Order reversed. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

¶ 15 Judge Shogan files a dissenting opinion.

## DISSENTING OPINION BY SHOGAN, J.:

¶ 1 The majority reverses the order granting the motion for judgment on the pleadings filed by sellers, Richard and Mary McCaigue, on the basis that the McCaigues entered into a contract for the sale of real estate with buyer, Harold Trowbridge. I would affirm the trial court order concluding that no agreement existed between the parties.

¶ 2 Regarding contract interpretation, we have stated:

It is a well established rule of contract interpretation that "[t]his Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation." *Nevyas v. Morgan*, 2007 PA Super 66, 921 A.2d 8, 15 (Pa.Super.2007), *citing Currid v. Meeting House Restaurant, Inc.*, 2005 PA Super 65, 869 A.2d 516, 519 (Pa.Super.2005), *appeal denied*, 584 Pa. 694, 882 A.2d 478 (2005). A fundamental rule in construing a contract "is to ascertain and give effect to the intention of the parties." *Shovel Transfer and Storage, Inc. v. Pennsylvania*, 559 Pa. 56, 65, 739 A.2d 133, 137 (1999), *quoting Lower Frederick Township v. Clemmer*, 518 Pa. 313, 329, 543 A.2d 502, 510 (1988). We must look to the writing to determine the intention of the parties:

It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. [*Shovel*, 559 Pa. at 65, 739 A.2d at 138.] When the words of a contract are clear and unambiguous, the meaning

of the contract is ascertained from the contents alone. *Steuart v. McChesney*, 498 Pa. 45, 49, 444 A.2d 659, 661 (1982). *See J.K. Willison, Jr. v. Consolidation Coal Co.*, 536 Pa. 49, 54, 637 A.2d 979, 982 (1994)(contract terms must be construed as manifestly expressed by the parties and according to the accepted and plain meaning of the language used by the parties).

*Mace v. Atlantic Refining Marketing Corp.*, 567 Pa. 71, 80, 785 A.2d 491, 496 (2001).

*Imperial Excavating & Paving, LLC v. Rizzetto Constr. Mgmt.*, 935 A.2d 557, 561 (Pa.Super.2007).

¶ 3 Here, the document in question is titled as a "Purchase Offer" in large, bold, underlined type and the document outlined terms of the offer. Particularly, the Purchase Offer indicates that "If Sellers [ ] accept this offer, than [sic] both buyer and sellers will enter into a sales agreement." The plain meaning of the language used by the parties indicates that the Purchase Offer was, thus, intended to be an offer that was conditional upon acceptance by the sellers. The Purchase Offer requires that an event must occur, namely, acceptance by the McCaigues **before** any contractual duties under a not as yet entered into sales agreement arose. Furthermore, although this event must occur, it is not certain to occur. The trial court concluded that the signed Purchase Offer was an "agreement to agree" and that "no express contract ever existed between" the McCaigues and Trowbridge. Trial Court Opinion, 10/22/08, at 4–5. I concur. The majority seems to ignore the "offer" language in the Purchase Offer, instead focusing only on whether essential terms of a contract were included in the Purchase Offer. I believe no meeting of the minds occurred herein and, thus, no contract resulted.

¶ 4 Accordingly, on this basis, I would affirm the trial court order. Thus, I respectfully dissent.